IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAVIER REYES OTERO,

                          Petitioner,                    OPINION & ORDER

    v.
                                                         14-cv-760-jdp
REED A. RICHARDSON,

                          Respondent.

---

Petitioner Javier Reyes Otero is currently in the custody of the Wisconsin Department of Corrections at the Stanley Correctional Institution. He seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court conviction for three counts of first-degree sexual assault of a child. On September 24, 2015, I ordered Otero's petition served on respondent and appointed counsel. Dkt. 5. Counsel obtained new evidence, a video of a colposcopy examination of the alleged victim, and now moves to amend his petition to include a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), based on the newly discovered video and stay his petition so that he can exhaust that new claim in state court. Dkt. 51 and Dkt. 52.

FACTS

I draw the following facts from the petition, briefs, and state court records. The facts are not quite complete, I but I have enough for the purpose of Otero's motion.

Otero was charged in Waukesha County Case No. 2007-CF-17 with sexually assaulting his autistic ten-year-old daughter, TO. At the September 2007 trial, TO testified that Otero placed his penis in her vagina. Dkt. 39-9, at 48. TO had first made this accusation to Kaysie Kowalewski, her therapist, on January 6, 2007, after TO asked Kowalewski why her bottom

itched and Kowalewski told TO that it must be because either TO touched herself there or someone else did.

Pediatrician Angela Carron testified that a general examination performed by Dr. Havel, an emergency room physician, the night TO made the accusation, revealed an intact hymen and no signs of trauma except for diffuse erythema (redness) and possible petechiae (small hemorrhaging of capillaries in the skin, similar to a bruise). *See* Dkt. 39-9, at 68–70. (A state crime laboratory technician later testified that swabs collected during that exam tested negative for semen and male DNA.) Carron also testified about the colposcopy examination that she performed on TO two days after the accusation. That examination, which used an instrument with a bright light and magnifying glass, also revealed no signs of trauma. But, Carron said, that didn't necessarily mean that TO hadn't been sexually abused.

The jury also heard from Linda Wentworth, a nurse who assisted Dr. Havel during the general examination. Wentworth testified that during the exam, Havel pointed to an area "near the anus [that] appeared red or [like] a bruise." Dkt. 39-10, at 53. She explained that such a bruise would be caused by "some kind of force." *Id.* When questioned about Havel's "no trauma" finding, she explained that it was limited to "the vaginal area" and did not include the area near the anus where she saw the bruise. *Id.* at 60. Margret Hermann, the lead detective on the case who was present during Havel's general examination, also testified that she saw a "reddish bluish type bruising area around [TO's] anal area" during the exam. Dkt. 39-11, at 83.

Otero called a pathologist, Edward Friedlander, as an expert witness. Friedlander explained that the redness near TO's anus could have been a rash, not petechiae—there was a

simple test to tell the difference, but it appeared that the test wasn't performed. Otero also testified, proclaiming his innocence.

On September 11, 2007, the jury found Otero guilty of three counts of first-degree sexual assault of a child.

Before sentencing, Otero, through new counsel, moved for a new trial and to compel the production of a video of the colposcopy exam, which had not previously been requested or produced. *See* Dkt. 39-32, at 76–77. The court granted the motion and ordered Children's Hospital of Wisconsin, which possessed the video, to make it available to Otero's expert, Friedlander. *See* Dkt. 39-22, at 35–37. But despite a court order and Otero's counsel's efforts to obtain the video from the state and Children's Hospital, the video wasn't produced.

The circuit court denied Otero's motion for a new trial and sentenced Otero to 20 years' confinement and 10 years' extended supervision on count one and 10 years' initial confinement and 10 years' extended supervision on counts two and three, consecutive but stayed.

On direct appeal, Otero argued that his trial counsel's failure to obtain discovery, including a January 31 medical report documenting a rash on TO's genitals, rendered his representation ineffective. The Wisconsin Court of Appeals concluded that Otero did not establish prejudice, and so it affirmed his conviction. The Wisconsin Supreme Court denied Otero's petition for review.

Otero, at this point proceeding pro se, filed a second petition for postconviction relief focused on the failure to obtain the colposcopy video. The court of appeals again concluded that Otero did not establish prejudice and affirmed the conviction. The Wisconsin Supreme Court denied Otero's petition for review.

In November 2014, Otero filed a pro se petition for federal habeas corpus relief in this court focusing, again, on the failure to obtain the colposcopy video. Around the same time, he filed another motion for postconviction relief in state court, which also focused on the video. The motion was denied. I ordered his petition served on respondent and appointed counsel because of the procedural complexity and the likelihood that expert testimony would be required concerning the medical evidence. Dkt. 5. The court granted Otero's unopposed motion for an order directing Children's Hospital to release the video; it was actually released in October 2016. *See* Dkt. 21; Dkt. 23; Dkt. 28.

Otero now offers a new expert report from Sue Rotolo, a certified sexual assault nurse examiner, explaining that the video shows "no signs of petechiae" (although that could have resolved between the first and second exams) and "no signs of anal bruising," which "would not have healed" between the exams. Dkt. 44-1, at 26. Otero also offers a new report from Friedlander stating that the video shows no petechiae and "no bruise," and that any bruising present at the first exam would have appeared on the colposcopy video. *Id.* at 28. Friedlander also notes that "[t]he video documents the child's very poor personal hygiene," including "particulate matter in feces" that "closely resemble petechiae" until they are wiped away. *Id.* at 28–29. He opines that the poor hygiene was likely the cause of TO's itching. He states that "[t]he video completely refutes [Wentworth's] impression that a bruise was present" and the January 31 medical report make "it more likely that [TO] did not suffer any signs of abuse but consistent and very poor hygiene." *Id.* at 29.

## ANALYSIS

Because Otero did not obtain the colposcopy video until after he filed his habeas petition in this court, he asks for leave to amend his petition to include a *Brady* claim based on the video. He also asks me to stay litigation in this court so that he can raise the new *Brady* claim in state court—because a failure to exhaust the claim in state court normally bars habeas relief on that claim. *See* 28 U.S.C. § 2254(b)(1)(A). I will grant both motions.

### A.  Motion for leave to amend

A habeas petition may be amended to include a new claim for relief if the new claim shares "a common 'core of operative facts'" with the original claims. *Mayle v. Felix*, 545 U.S. 644, 659 (2005). Here, Otero's original petition concerned his trial counsel's failure to file a formal discovery demand and failure to obtain the colposcopy video, among other things. His new *Brady* claim concerns the state's failure to disclose the colposcopy video. These claims are entwined and share the same core facts—the discovery demands made, the court order to release the colposcopy video, the contents of the video, and the medical evidence presented at trial. So I will allow Otero to amend his petition to include the new claim.

### B.  Motion for a stay

I may stay Otero's petition so that he may attempt to exhaust his new claim in state court if (1) he has good cause for his failure to exhaust his new claim before now and (2) the claim is not plainly meritless. *See Rhines v. Weber*, 544 U.S. 269, 277 (2005); *see also Shuttlesworth v. Richardson*, No. 14-cv-567, 2016 WL 6651412, at *3 (W.D. Wis. Nov. 10, 2016). Otero fulfills both requirements.

### 1. Good cause

Otero has shown good cause. Otero didn't get the video until October 2016, despite multiple requests. Of course, his trial counsel didn't request the video—in fact, he didn't request *any* discovery. Otero's claims of ineffective assistance of counsel regarding the failure to request discovery have failed before, but they failed on *Strickland*'s prejudice prong, not the deficient performance prong. Now that Otero actually has the video, his ineffective assistance claim is bolstered; I conclude that Otero's trial counsel's failure to make a discovery demand does not undermine Otero's good-cause argument concerning a potential *Brady* claim. Otero immediately pursued claims based on the video once he obtained it. So he has shown good cause for failing to exhaust claims based on the video in state court.

Respondent argues that Otero does not show good cause because he already brought a *Brady* claim in state court in his November 2014 postconviction relief motion, which was denied, and he failed to appeal. Otero argues that he wasn't bringing a *Brady* claim, but rather he was asking for discovery and merely citing *Brady*. Regardless, Otero could not have raised *this* claim in state court before, because he didn't have the video yet.

### 2. The merits

Otero's *Brady* claim is not plainly meritless. To establish a *Brady* violation, a defendant must demonstrate (1) that the prosecutor willfully or inadvertently suppressed evidence; (2) that the evidence was favorable to the defendant, either because it was exculpatory or because it has impeachment value; and (3) the evidence was material such that prejudice ensued, that is, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Kyles v. Whitley*, 514 U.S. 419, 432–33 (1995); *United States v. Bagley*, 473 U.S. 667, 682 (1985). Respondent argues that Otero

cannot meet these elements for various reasons. Respondent's arguments might have some traction in state court, but I need not thoroughly address them here because the only question I must answer is whether a *Brady* claim based on the video would be *plainly* meritless. The answer is clearly no.

First, the prosecutor never disclosed the video to Otero, despite a request by Otero's sentencing counsel. Respondent argues that the prosecutor never possessed the video and therefore couldn't give it to Otero, but *Brady*'s disclosure obligation is not that narrow. *See, e.g.*, *Kyles*, 514 U.S. at 437–38 ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case . . . . [W]hether the prosecutor succeeds or fails in meeting this obligation . . . the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."). Whether the prosecutor suppressed a video held by Children's Hospital is a question for the state court, but I cannot say that Otero's argument that *Brady*'s disclosure obligation extended to the video is plainly meritless. Second, the video is favorable to Otero, both as exculpatory evidence and as a means to impeach Wentworth—respondent does not directly challenge this element. Third, the state court could determine that the result of the trial would have been different if the video had been disclosed to Otero.

The third element—prejudice—is the source of respondent's main argument, which goes like this: the video wouldn't have made a difference at trial because Carron testified that she saw no signs of trauma during the colposcopy exam, so the video would be cumulative evidence. But documentary evidence supporting one witness's testimony and discrediting another's would not be cumulative. Without the video, the jury was faced with competing narratives based on medical professionals' memories; with the video, Otero would have had evidence

undermining Wentworth's testimony, supporting Carron's testimony, and allowing Friedlander to testify without speculation. I cannot say that Otero's argument that the video would have made a difference at trial is plainly meritless.

Finally, respondent argues that Otero cannot meet Wisconsin's newly-discovered-evidence standard, which he must if he wishes to bring a second or subsequent petition for postconviction relief in state court. *See* Wis. Stat. § 974.06(4); *State v. Edmunds*, 2008 WI App 33, ¶¶ 10–13, 308 Wis. 2d 374, 746 N.W.2d 590 (listing the elements of a newly-discovered evidence claim as "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative" and concluding that the petitioner's newly-discovered-evidence claim was not procedurally barred (quoting *State v. Armstrong*, 2005 WI 119, ¶ 161, 283 Wis. 2d 639, 700 N.W.2d 98)). Respondent doesn't explain why this court need consider Wisconsin's standard now; it's not clear that state procedural bars should be part of a federal court's plainly-meritless analysis. But regardless, for the reasons stated above, Otero's bid for a successive postconviction relief petition is not plainly meritless: the video is newly discovered, material, and not merely cumulative, and Otero at least has an argument that he wasn't negligent in seeking it.

Because Otero's new *Brady* claim is not plainly meritless and he has shown good cause for failing to exhaust it before now, I will stay his petition and administratively close this case so that he may pursue the claim in state court. The stay may not be indefinite—I must "place reasonable time limits on [Otero's] trip to state court and back." *Rhines*, 544 U.S. at 278. So Otero must present his claim in state court within 90 days of the date of this order. And he

must ask this court to reinstate this case no later than 30 days after the conclusion of the final state court proceedings. The court will then schedule further proceedings in this case.

ORDER

IT IS ORDERED that:

1. Petitioner Javier Reyes Otero's motion to amend his habeas petition, Dkt. 51, is GRANTED.

2. Petitioner's motion to stay the proceedings pending exhaustion of Otero's new claim in state court, Dkt. 52, is GRANTED and the clerk's office is directed to administratively close this case.

3. Petitioner must present his claim in state court within 90 days. To reopen this case, petitioner must advise the court and the respondent by filing a written motion to reinstate within 30 days of the completion of the proceedings in the Wisconsin state courts. At that point, he must file his amended petition as a separate entry on the docket.

Entered March 28, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge